## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PAUL WYSONG,
      **PLAINTIFF,**

v.                     CIVIL ACTION NO.:

GULF CABLE, LLC.,
      **DEFENDANT**.

_____/

## COMPLAINT

Plaintiff, Paul Wysong, (hereinafter referred to as the "Plaintiff" or "Wysong"), by and through his undersigned attorney, sues the defendant, Gulf Cable, LLC., (hereinafter referred to as the "Defendant" or "Gulf Cable"), and alleges as follows:

### *JURISDICTION AND VENUE*

1.    Plaintiff brings this action to remedy discrimination on the basis of race, and retaliation in the terms, conditions, and privileges of Plaintiff's employment in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* the Civil Rights Act of 1991, 42 U.S.C. § 1981, and Florida Private Sector Whistle-Blower's Act ("FPWA"), §§ 448.101 – 448.105, Florida Statutes.

2.    Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f).

3.    Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.

S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

4.      Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54 and other Florida Statutes as set forth herein.

5.      This action lies in the Northern District of Florida, Pensacola Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

6.      All conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f). Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202127307) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D202100061) on October 27, 2021. The FCHR issued a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested his 90 day Notice of Right to Sue letter from the EEOC which was received on July 19, 2021.

## *PARTIES*

7.      Plaintiff is a Caucasian male and a citizen of the State of Florida and a resident of Santa Rosa County who resides in Milton, Florida. Plaintiff had been employed with Defendant from March 2, 2020 until his involuntary termination on July 27, 2020.

8.     Defendant, Gulf Cable, LLC., is a manufacturer of specialty cable products for companies in the renewable solar and wind energy, irrigation, electric utility distribution and transmission, oil and gas refineries and production and petrochemical markets. Defendant is licensed to do and doing business in the State of Florida. Defendant is an employer within the meaning of Title VII; §1981; §§ 448.101 – 448.105, Florida Statutes as it employs in excess of 15 employees.

*FACTS*

9.     Plaintiff is a Caucasian male.

10.     Plaintiff was hired in March 2020, as a Corporate Quality Assurance (QA") Manager.

11.     Plaintiff was based out of the Defendant's Milton, FL facility, but he also oversaw Defendant's other remote locations as well.

12.     As a QA Manager, Plaintiff was generally responsible for overseeing Defendant's quality management systems and procedures for its cable products production process.

13.     During Plaintiff's employment with Defendant, he performed the duties and responsibilities of his position in a satisfactory manner.

14.     In late May 2020, Plaintiff discovers that Defendant's management were falsifying inspection result documentation in the QC lab, a department that was not under his supervision or control.

15.     Plaintiff further discovered that Defendant was using products supplied and imported from foreign countries for its customer's orders after being instructed they could not purchase material from foreign country vendors.

16.     Plaintiff learned that Defendant was selling its products under the pretense it was manufactured at its Milton facility when it was actually being imported from foreign country vendors.

17.     Plaintiff also discovered that Defendant was using the ISO Certification of WTEC as its own and intentionally misrepresenting this to its customers when asked if Defendant was ISO certified.

18.     In late June 2020, Plaintiff learned that that none of Defendant's "Flame Resistant" (VW-1 rating) products had ever passed an internal flame-resistant test but were sold to Defendant's customers as such.

19.     Concerned that Defendant was engaging in unfair methods of competition, unfair or deceptive acts or practices with its customers, and Plaintiff not wanting to be a part of or participate in such activity, he reported his findings and discoveries to Defendant's senior management including Kevin Bate, VP.

20.     During Plaintiff's employment with Defendant, he encountered unfavorable treatment compared to other non-Caucasian employees.

21.     Employees like, Suren Shah, Ghanem Alnaser, Mohammad Ramroop, Ayman Almuhana, and Wameed Abdelmajeed were treated more favorably and not

required to follow company policies, yet the Caucasian employees were required to do so.

22.    Plaintiff was required to clock in and out and was subjected to daily searches of his person and property while certain other non-Caucasian employees were not subject to the same daily searches or require to clock in and out.

23.    Wameed Abdelmajeed forcefully refused the searching of his property by the third-party security guards and was still allowed to enter the property without any HR disciplinary action taken.

24.    Ayman Almuhana started on the exact same day as Plaintiff.

25.    Both Ayman Almuhana and Plaintiff held Manager positions and came into Gulf Cable with over 25 years of experience in the quality assurance profession.

26.    Ayman Almuhana was paid $125,000 per year plus free housing, car and travel expenses for interviewing.

27.    Plaintiff was paid $110,000 per year with no housing, no car and his interview costs were paid for out of his own pocket.

28.    Plaintiff complained about discrimination and refused to participate in the fraudulent activity being requested of him in using falsified and misleading documentation.

29.    Plaintiff communicated to Defendant's Human Resources ("HR") (Jameson Cutchens) and senior management on more than one occasion his findings,

refusal to participate in such activities and his complaints regarding these multiple issues, including racial and/or national origin discrimination, sexual harassment and the company CEO bypassing OSHA regulations by paying out of pocket for employee's surgery's in order to not report injuries on the Defendant's mandatory OSHA injury logs.

30.    Some of the comments reported by Plaintiff including excuses given to him as to why he was treat differently such as; "It's because we're not one of them", "They are protected by Brian", "Some grew up in the village with Brian, so he brought them with him", "Here…we are the foreigners".

31.    On July 9, 2020, Plaintiff requested to meet with Kevin Bates made no attempt to address or correct any of Plaintiff's concerns.

32.    Mr. Bates stated that he would have to review Plaintiff's concerns with Brian (CEO) and Sherie (COO).

33.    Plaintiff was terminated on July 27, 2020, within 20 days of his meeting with Kevin Bates.

34.    Plaintiff was subjected to disparate treatment and different terms and conditions of his employment and was held to a different standard because of his race and was retaliated against for opposing and reporting the unlawful discrimination and activates of Defendant.

### FIRST CAUSE OF ACTION
*(RACE DISCRIMINATION- FEDERAL CLAIM - 42 U.S.C. § 1981)*

6

35.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

36.   Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of his race in violation of 42 U.S.C. § 1981.

37.   Plaintiff is a Caucasian male.

38.   Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

39.   Plaintiff's employment with Defendant was terminated on July 27, 2020.

40.   Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

41.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### *(RACE RETALIATION/HOSTILE WORK ENVIRONMENT- 42 U.S.C. § 1981)*

42.   Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

43.     Defendant has retaliated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of 42 U.S.C. § 1981.

44.     Plaintiff is a Caucasian male.

45.     Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

46.     Plaintiff's employment with Defendant was terminated on July 27, 2020.

47.     Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

48.     In the weeks prior to Plaintiff's termination, he provided a formal complaint to HR and Kevin Bates which outlined the discrimination he was being subjected to.

49.      On July 27, 2020, only weeks after having reported the racial discrimination to his manager and Defendant's Human Resources department, Plaintiff's employment with Defendant was terminated.

50.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and

until this Court grants relief.

### *THIRD CAUSE OF ACTION*
*(Race Discrimination-– Title VII)*

51.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

52.     Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of his race in violation of Title VII.

53.     Plaintiff is a Caucasian male.

54.     Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

55.     Plaintiff's employment with Defendant was terminated on July 27, 2020.

56.     Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

57.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

### *FOURTH CAUSE OF ACTION*
*(RACE RETALIATION/HOSTILE WORK ENVIRONMENT - TITLE VII)*

58.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

59.     Defendant retaliated against Plaintiff engaging in a protected activity in the terms and conditions of her employment on the basis of his race in violation of Title VII.

60.     Plaintiff is a Caucasian male.

61.     Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

62.     Plaintiff's employment with Defendant was terminated on July 27, 2020.

63.     Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

64.     In the weeks prior to Plaintiff's termination, he provided a formal complaint to HR and Kevin Bates which outlined the discrimination he was being subjected to.

65.     On July 27, 2020, only weeks after having reported the racial discrimination to his manager and Defendant's Human Resources department, Plaintiff's employment with Defendant was terminated.

66.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

### FIFTH CAUSE OF ACTION
(NATIONAL ORIGIN DISCRIMINATION- FEDERAL CLAIM - 42 U.S.C. § 1981)

67.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

68.     Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of his race in violation of 42 U.S.C. § 1981.

69.     Plaintiff is a Caucasian male.

70.     Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

71.     Plaintiff's employment with Defendant was terminated on July 27, 2020.

72.     Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

73.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and

until this Court grants relief.

## SIXTH CAUSE OF ACTION
*(NATIONAL ORIGIN RETALIATION/HOSTILE WORK ENVIRONMENT- 42 U.S.C. § 1981)*

74.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

75.     Defendant has retaliated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of 42 U.S.C. § 1981.

76.     Plaintiff is a Caucasian male.

77.     Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

78.     Plaintiff's employment with Defendant was terminated on July 27, 2020.

79.     Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

80.     In the weeks prior to Plaintiff's termination, he provided a formal complaint to HR and Kevin Bates which outlined the discrimination he was being subjected to.

81.      On July 27, 2020, only weeks after having reported the racial discrimination to his manager and Defendant's Human Resources department,

Plaintiff's employment with Defendant was terminated.

82.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

### SEVENTH CAUSE OF ACTION
*(National Origin Discrimination-– Title VII)*

83.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

84.     Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of his race in violation of Title VII.

85.     Plaintiff is a Caucasian male.

86.     Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

87.     Plaintiff's employment with Defendant was terminated on July 27, 2020.

88.     Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

89.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and

until this Court grants relief.

## EIGHTH CAUSE OF ACTION
*(NATIONAL ORIGIN RETALIATION/HOSTILE WORK ENVIRONMENT - TITLE VII)*

90.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 of this complaint with the same force and effect as if set forth herein.

91.     Defendant retaliated against Plaintiff engaging in a protected activity in the terms and conditions of her employment on the basis of his race in violation of Title VII.

92.     Plaintiff is a Caucasian male.

93.     Plaintiff was more than qualified for the position of Corporate Quality Assurance (QA") Manager and performed the duties and responsibilities of a deliver driver in a more than satisfactory manner.

94.     Plaintiff's employment with Defendant was terminated on July 27, 2020.

95.     Plaintiff was consistently treated less favorably than his Non-Caucasian co-workers.

96.     In the weeks prior to Plaintiff's termination, he provided a formal complaint to HR and Kevin Bates which outlined the discrimination he was being subjected to.

97.     On July 27, 2020, only weeks after having reported the racial

14

discrimination to his manager and Defendant's Human Resources department, Plaintiff's employment with Defendant was terminated.

98.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

### NINTH CASUE OF ACTION
*(VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLE-BLOWER'S ACT
Fla. Stat. Sections 448.101—448.105)*

99.    Plaintiff restates and re-avers the allegations contained within Paragraphs 1- 34 of the Complaint, as if fully set forth herein.

100.    This is an action for a violation of the Florida Private Sector Whistle-blower Act, *Fla. Stat. Sections* 448.101—448.105.

101.    At all material times herein, Plaintiff was an employee of the Defendant within the meaning of *Florida Statute Section* 448.101(3).

102.    At all material times herein, Defendant was an employer, within the meaning of *Florida Statute Section* 448.101(3).

103.     As a QA Manager, Plaintiff was generally responsible for overseeing Defendant's quality management systems and procedures for its cable products production process.

104.    During Plaintiff's employment with Defendant, he performed the duties and responsibilities of his position in a satisfactory manner.

15

105.   In late May 2020, Plaintiff discovers that Defendant's management were falsifying inspection result documentation in the QC lab, a department that was not under his supervision or control.

106.   Plaintiff further discovered that Defendant was using products supplied and imported from foreign countries for its customer's orders after being instructed they could not purchase material from foreign country vendors.

107.   Plaintiff learned that Defendant was selling its products under the pretense it was manufactured at its Milton facility when it was actually being imported from foreign country vendors.

108.   Plaintiff also discovered that Defendant was using the ISO Certification of WTEC as its own and intentionally misrepresenting this to its customers when asked if Defendant was ISO certified.

109.   In late June 2020, Plaintiff learned that that none of Defendant's "Flame Resistant" (VW-1 rating) products had ever passed an internal flame-resistant test but were sold to Defendant's customers as such.

110.   Fla. Stat. § 501.204, Florida's Deceptive Unfair Trade Practices Act makes it unlawful to engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. A practice is unfair under FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

consumers." Fla. Stat. § 501.204.

111.   Concerned that Defendant was engaging in unfair methods of competition, unfair or deceptive acts or practices with its customers, Plaintiff reported his findings and discoveries to Defendant's senior management including Kevin Bate, VP.

112.   Plaintiff also complained about acts of racial and national origin discrimination in violation of federal and state anti-discrimination laws.

113.   Plaintiff communicated to Defendant's Human Resources ("HR") (Jameson Cutchens) and senior management on more than one occasion his findings and complaints regarding these multiple issues, including racial and/or national origin discrimination, sexual harassment and the company CEO bypassing OSHA regulations by paying out of pocket for employee's surgery's in order to not report injuries on the Defendant's mandatory OSHA injury logs.

114.   Plaintiff's actions were based upon the reasonable and good faith beliefs of the Plaintiff that he was complying with any and all applicable federal and state law when no responsive remedial action was undertaken by Defendant's management or HR.

115.   Plaintiff's actions in reporting his findings and other relevant information were done according to a reasonable and *bona fide* good faith belief that he had an obligation to report his findings of fraud and/or intentional

misrepresentation to the general public and its customers regarding its products, racial and/or national origin discrimination and for falsification of mandatory OSHA reporting requirements.

116.   In short, Plaintiff was terminated from his employment on July 27, 2020, after reporting his findings and refusal to participate in Defendant's fraud and/or intentional misrepresentation to OSHA, general public and its customers regarding its products, racial and/or national origin discrimination and for falsification of mandatory OSHA reporting requirements, within close proximity to his aforementioned statutorily protected activity.

117.   There was no legitimate business reason, or business justification, for implementing the termination of Plaintiff from his employment with Defendant; and Plaintiff's objections to and refusal to participate in Defendant's legal violations were consistently and reasonably made, in good faith.

118.   The adverse personnel action, the termination of Plaintiff's employment, as described and set forth above, clearly violated *Florida Statute Section* 448.102(3); and such action clearly constituted a prohibited employment practice, contrary to the public policy of the State of Florida.

119.   As a result of the Defendant's violations of the Florida Private Sector Whistleblower Act, the Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory

damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory discharge from employment.

120.   As a result of being wrongfully and unlawfully discharged from his employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

121.   Plaintiff has retained the undersigned attorney to assist his, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

122.   Plaintiff is entitled to recovery of reasonable attorney's fees and costs, pursuant to §448.104, *Florida Statutes*.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a)      Declaring the acts and practices complained of herein are violation of Title VII; 42 U.S.C. § 1981; and Florida Private Sector Whistle-Blower's Act ("FPWA"), §§ 448.101 – 448.105, Florida Statutes;

b)      Enjoining and permanently restraining those violations of Title VII; 42 U.S.C. § 1981; and Florida Private Sector Whistle-Blower's Act ("FPWA"), §§ 448.101 – 448.105, Florida Statutes;

c)  Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d)  Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory treatment of her and make his whole for all earnings he would have received but for Defendant's discriminatory treatment, including but not limited to, wages (past and future), pension, and other lost benefits.

e)  Awarding Plaintiff Front Pay in lieu of reinstatement;

f)  Awarding Plaintiff compensatory damages;

g)  Awarding Plaintiff the costs of this action together with a reasonable attorney's fees; and,

h)  Granting such other and further equitable relief as the Court deems just and proper in the premises.

## *DEMAND FOR JURY TRIAL*

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

Dated: October 12, 2021.          By: */s/ Clayton M. Connors*
                                   CLAYTON M. CONNORS
                                   Florida Bar No.: 0095553
                                   Email: cmc@westconlaw.com

20

**THE LAW OFFICES OF
CLAYTON M. CONNORS, PLLC.**
4400 Bayou Blvd., Suite 32A
Pensacola, Florida 32503
Tel: (850) 473-0401
Fax: (850) 473-1388

Attorney for the Plaintiff